UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BENJAMIN W. BROWN,

Plaintiff,

v.

CAUSE NO. 3:21-CV-461-JD-MGG

INDIANA DEPT. OF CORR., et al.,

Defendants.

OPINION AND ORDER

Benjamin W. Brown, a prisoner without a lawyer, filed a complaint and a motion for a preliminary injunction, alleging that he was beaten by a prison guard and then received inadequate medical care. ECF 2, 3. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Brown alleges that on February 24, 2021, there was a physical altercation between inmates in his dorm, but he was not involved in it. ECF 2 at ¶ 23. While watching the events from his top bunk, he witnessed Correctional Officer Davis strike an inmate without warning. *Id.* Later, as Brown was telling a custody staff sergeant what he had seen, Davis approached and said, "Shut your mouth bitch," and started

physically assaulting him. *Id.* at ¶ 24. Davis and another officer pulled Brown off the bunk, and he fell five feet to the floor. *Id.* at ¶¶ 24-25. The assault continued while he was on the floor. *Id.* at ¶ 25.

The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). "[T]he question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quotation marks and citation omitted). Here, the complaint plausibly alleges Correctional Officer Davis used excessive force in violation of the Eighth Amendment.

Brown also alleges a failure-to-intervene claim against the other officers present during the attack. ECF 2 at ¶ 67. "[O]fficers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so [may be] held liable." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000). However, none of the named defendants were alleged to be present during the attack, and so it is not reasonable to infer any were able to prevent the attack.

Brown alleges he received constitutionally inadequate medical care following the attack. The Eighth Amendment entitles inmates to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate

2

indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 ( citation and internal quotation marks omitted).

At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). "[W]hether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012)).

Brown has stated a claim against Nurse Josh Kuiper, Nurse Loop, and Dr. Patel under this legal standard. After the assault on February 24, 2021, he received x-rays for his face and left shoulder, which were negative, but did not get an x-ray of his back revealing a fracture in his lumbar area until May 24. ECF 2 at ¶¶ 26, 48. Between the assault and the back x-ray, he saw Kuiper twice—on February 25 and on March 16—complaining of pain. *Id.* at ¶¶ 27, 42. He requested a bottom bunk pass and pain medication. *Id.* He explained that he could not buy pain medication from commissary because he was indigent. *Id.* Kuiper denied both requests. *Id.* Brown saw Nurse Loop on February 26th due to severe chest and back pain. *Id.* at ¶ 30. Instead of treating him, she accused him of being intoxicated and had him locked up in the cage. *Id.* Similarly, after the x-ray revealed a fracture, Dr. Patel did not order any special accommodations for his injuries besides prescribing Naproxen, which Brown claims was ineffective in managing his pain. *Id.* at ¶ 48; ECF 4 at 4.

Brown does not state a claim against Correctional Officer Yacu, however. The allegations against him are that the morning of February 26, 2021, Brown complained of severe chest and back pain. ECF 2 at ¶ 29. He says Yacu ignored his repeated requests until other inmates began complaining about him ignoring Brown. *Id.* Then, he was sent to medical. There is not enough information to reasonably infer that Yacu was aware of a serious medical need that required immediate attention. Nor is there an indication that the delay in receiving treatment was significant.

Brown states an excessive-force claim against Lieutenant Crittendon, whom Nurse Loop enlisted to escort Brown from medical to the cage due to his suspected

intoxication. Brown alleges that while Crittendon was escorting him to the cage, he used a hallway where there were no cameras and purposely grabbed Brown's injured shoulder and squeezed in order to cause him pain. ECF 2 at ¶ 30.

Brown alleges that the assault by Lieutenant Crittendon happened in part because the hallway where it occurred is not monitored by cameras, and staff assaults happen there frequently. He states that "[i]nmates for years have filed complaints in regards to this undocumented area," yet the administration has yet to correct the problem. ECF 2 at ¶ 31. It is possible that this area could be considered to present a serious risk to offenders. However, the allegations are insufficient to reasonably infer any particular defendant was made aware of the risk so as to hold them personally liable.

Brown also makes several allegations against supervisory officials Warden John Galipeau, Captain Farley, and the GSC Complex Director U.T. Sonnenburg. A lawsuit against an individual under § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). Defendants cannot be held liable simply because they oversee operations at the prison or supervise prison officers. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). However, "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez*, 792 F.3d at 781 (quotation marks and brackets omitted). "[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett v.*

5

*Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). But where non-medical prison officials receive communications that are sufficient in their "content and manner of transmission" to give those officials "notice to alert him or her to an excessive risk to inmate health or safety[,]" then there is a duty to take some action. *Arnett*, 658 F.3d at 755 (quotation marks omitted).

Brown details several instances in which he saw Warden Galipeau, Captain Farley, and Director Sonnenburg and says he attempted to tell them about his injuries. ECF 2 at ¶¶ 33, 36, 40, 41, 44, 45. These broad allegations, without more, do not establish the personal responsibility necessary for § 1983 liability. Notably, Brown was seen by medical staff on multiple occasions, and so this is not a case where he received no medical care. Instead, he was complaining that the medical care he received was inadequate. But even if his care was deficient, non-medical officers may rely on treatment decisions by medical staff.

Brown also details an assault against him by other inmates in his dorm on May 25, 2021. ECF 49. However, these allegations do not state a claim. Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). But, "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Id*. Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). And, "the fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials

were therefore deliberately indifferent to his safety." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). Instead, the plaintiff must establish "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010), *see also Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008). Here, there is no indication of a specific threat to Brown beyond the general danger in his dorm.

The complaint names the Indiana Department of Correction as a defendant, but the Eleventh Amendment generally precludes a citizen from suing a State or one of its agencies or departments in federal court. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). There are three exceptions to Eleventh Amendment immunity: (1) suits directly against the State based on a cause of action where Congress has abrogated the state's immunity from suit; (2) suits directly against the State if the State waived its sovereign immunity; and (3) suits against a State official seeking prospective equitable relief for ongoing violations of federal law. *MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999). None of these exceptions apply here. Congress did not abrogate the States' immunity through the enactment of Section 1983. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Indiana has not consented to this lawsuit. And although Brown is seeking equitable relief, the prison warden sued in his official capacity is the proper defendant. Therefore the Indiana Department of Correction will be dismissed.

Brown also named as defendants Robert Carter (the Commissioner of IDOC), Michelle Rebac (the Director of Nursing at the prison), Major Cornett (a supervisor), and Wexford of Indiana (the company contracted to provide medical care at the prison). However, other than describing who each defendant is, he does not mention them anywhere in the body of the complaint. Defendants cannot be held liable based solely on their supervisory position over others or their status as an employer. *Burks*, 555 F.3d at 594. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Therefore, the complaint does not state claims against these defendants.

Brown alleges various state law tort claims. However, before a tort claim can proceed in court against an employee of the State of Indiana, the plaintiff must file a notice of tort claim as required by the Indiana Tort Claims Act. *See* Indiana Code § 34-13-3-6 and *Poole v. Clase*, 476 N.E.2d 828 (Ind. 1985). Here, Brown does not mention filing a tort claim notice and it is not plausible to infer that he did. Therefore he may not proceed on state law claims.

Brown also filed a motion for a preliminary injunction seeking proper pain management, treatment, and accommodations for his injuries. ECF 4. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable

harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Additionally,

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, injunctive relief—if granted—would be limited to requiring that Brown be provided with constitutionally adequate medical care for his condition.

Brown may proceed on a claim for injunctive relief to obtain medical care for the injuries from the February 24th assault that is consistent with the Eighth Amendment. Warden Galipeau has both the authority and the responsibility to ensure that Brown receive constitutionally adequate medical care as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Brown will be allowed to proceed on an official capacity claim for permanent injunctive relief against Galipeau.

For these reasons, the court:

(1) GRANTS Benjamin W. Brown leave to proceed against Warden John Galipeau in his official capacity for permanent injunctive relief for constitutionally

adequate medical care for his broken back and pain as required by the Eighth Amendment;

(2) GRANTS Benjamin W. Brown leave to proceed against Correctional Officer Davis in his individual capacity for compensatory and punitive damages for using excessive force against him on February 24, 2021, in violation of the Eighth Amendment;

(3) GRANTS Benjamin W. Brown leave to proceed against Nurse Josh Kuiper for deliberate indifference to his serious medical needs when Kuiper denied him pain medication and other accommodations for his injuries on February 25, 2021, and March 16, 2021, in violation of the Eighth Amendment;

(4) GRANTS Benjamin W. Brown leave to proceed against Nurse Loop for deliberate indifferent to his serious medical needs when Loop had him locked in a cage for suspected intoxication instead of treating his medical needs on February 26, 2021, in violation of the Eighth Amendment;

(5) GRANTS Benjamin W. Brown leave to proceed against Dr. Patel for deliberate indifference to his serious medical needs by failing to order special accommodations for his back injury and by failing to adequately treat the pain following the discovery of a fractured back on May 24, 2021, in violation of the Eighth Amendment;

(6) GRANTS Benjamin W. Brown leave to proceed against Lieutenant Crittendon for using excessive force against him by purposely squeezing his injured shoulder to cause pain on February 26, 2021, in violation of the Eighth Amendment;

(7) DISMISSES all other claims;

(8) DISMISSES Indiana Department of Correction, Robert Carter, Jr., Sonnenburg, Yacu, Michelle Rebac, Wexford of Indiana, Farley, and Cornett;

(9) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Warden John Galipeau, Lieutenant Crittendon, and Correctional Officer Davis at the Indiana Department of Correction, with a copy of this order, the complaint, and the motion for preliminary injunction (ECF 2, 4), pursuant to 28 U.S.C. § 1915(d);

(10) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Josh Kuiper, Dr. Patel, and Nurse Loop at Wexford of Indiana, LLC, with a copy of this order, the complaint, and the motion for preliminary injunction (ECF 2, 4), pursuant to 28 U.S.C. § 1915(d);

(11) DIRECTS the clerk to fax or email a copy of the same documents to Warden John Galipeau at the Westville Correctional Facility;

(12) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information;

(13) ORDERS Warden John Galipeau to file and serve a response to the preliminary injunction, as soon as possible but not later than **July 16, 2021**, with supporting medical documentation and declarations from other staff as necessary describing/explaining how Benjamin W. Brown's broken back and pain are being treated in a manner that comports with the Eighth Amendment's requirements; and

11

(14) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Warden John Galipeau, Lieutenant Crittendon, Correctional Officer Davis, Nurse Josh Kuiper, Dr. Patel, and Nurse Loop to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 25, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT